# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

---

**VIANNALYNN CLAYHIGGS,**

          Plaintiff,

    **-vs-**

                                 **Case No. 13-C-494**

**CAROLYN COLVIN, Acting Commissioner**
**of the Social Security Administration,**

          Defendant.

---

## DECISION AND ORDER

---

Viannalynn Clayhiggs appeals from the denial of her application for social security disability benefits. Clayhiggs' application was here before, but it was returned for further proceedings pursuant to a joint stipulation. On remand, the Administrative Law Judge conducted another hearing and found that Clayhiggs suffers from the following severe impairments: idiopathic cardiomyopathy, congestive heart failure (CHF), fibromyalgia, asthma, hypertension, headaches, and obesity. However, the ALJ found that Clayhiggs was not disabled because she had the residual functional capacity to perform sedentary work with certain nonexertional limitations.

The Court must uphold the Commissioner's decision so long as it is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Court reviews the record as a whole but does not substitute its judgment for that of the ALJ by reweighing evidence,

resolving material conflicts, or reconsidering facts or the credibility of witnesses. *Cannon v. Apfel*, 213 F.3d 970, 974 (7th Cir. 2000). Remand may be required, however, if the ALJ "committed an error of law," or if the ALJ "based the decision on serious factual mistakes or omissions." *Beardsley v. Colvin*, --- F.3d ----, 2014 WL 3361073, at *2 (7th Cir. July 10, 2014). The ALJ also has a "basic obligation to develop a full and fair record," and must "build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Id.*

Clayhiggs argues that the ALJ erred by failing to adequately assess the opinions of her various treating providers. Such an opinion is entitled to controlling weight if it is well supported by objective medical evidence and consistent with other substantial evidence in the record. *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013). An ALJ who chooses to reject a treating physician's opinion must provide a sound explanation for the rejection. *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). Even if not entitled to controlling weight, the ALJ still must "determine what value the assessment did merit." *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011).

The ALJ addressed three treating opinions in the following four paragraphs:

> Over the past several years, the claimant's doctors have filled out many residual functional capacity forms indicating the claimant is not capable of full-time work. Her primary care physician, Joan Neuner, M.D., has filled out no less than nine such forms with varying degrees of functional limitations. . . . Although each differs slightly from the others in how long the claimant can stand, walk, sit and how much she can lift etc., each limits the claimant

to only part-time work and opines she would miss multiple[] days of work each month.

The undersigned gives Dr. Neuner's opinions little weight. Some of the forms were filled out during the period of September 2007 to June 2009 when the claimant was engaging in [substantial gainful activity] . . . or when the claimant was working for Milwaukee County. . . . It is clear that Dr. Neuner was basing her opinions primarily on the subjective complaints of the claimant and, [as] has been demonstrated above, those complaints are not credible.

The same can be said for the opinions of the claimant's treating rheumatologist, Paul Halverson, M.D. He also filled out multiple functional capacit[y] forms and opined that the claimant was limited to only part-time work. . . . Again, these opinions are based primarily on the claimant's subjective complaints and are inconsistent with her previous and subsequent work activity as well as the limitations the claimant gave to DVR. Dr. Halverson's opinions are given little weight.

The claimant's treating cardiologist filled out three functional capacit[y] forms. . . . However, these opinions are either incomplete . . ., limit the claimant to sedentary work . . . or confusing as to what the limitations actually are . . . . In any event, Exhibit 23F is dated November 13, 2008, which was during the time the claimant was working so any limitation to less than full-time work is given no weight.

(R. 866).

Thus, the ALJ rejected all three treating opinions because they were grounded in Clayhiggs' subjective complaints, which the ALJ did not find to be credible. Relatedly, the ALJ rejected the treating opinions because they were made at a time when the claimant was performing full-time work. This is an erroneous line of reasoning. It is well-established that employment "is not proof positive of ability to

work, since disabled people, if desperate (or employed by an altruist), can often hold a job." *Wilder v. Apfel*, 153 F.3d 799, 801 (7th Cir. 1998). Indeed, the ALJ expressed his amazement as to how Clayhiggs manages to "get by. . ." R. 927. Clayhiggs explained that she relies on low-income housing and food stamps, and that she can't even afford insurance for her car. R. 927-29.

More generally, the ALJ's credibility finding is not supported by substantial evidence. For example, the ALJ reasoned that there is "nothing approaching objective findings to support the claimant's complaints of severe and chronic pain. Therefore, the claimant's credibility is the true determinate of her level of pain." R. 865. This is incorrect. Dr. Halverson's treatment notes reflect numerous and repeated objective findings of fibromyalgia, including tender points in the posterior neck, right lateral neck, and shoulder (among other points). R. 331-32; *Weitzenkamp v. Unum Life Ins. Co. of Am.*, 500 Fed. App'x 506, 507 (7th Cir. 2013) ("Because Weitzenkamp underwent a 'trigger test' — a test where a doctor presses down on 18 fixed locations on the patient's body to determine whether the patient has fibromyalgia — we concluded that the diagnosis was supported by objective medical evidence . . ."). Dr. Halverson also found that Clayhiggs met the American Rheumatological criteria for fibromyalgia. R. 831-35. In this manner, the ALJ's credibility finding infected and undermined his assessment of the treating providers. Both were errant, requiring a remand for further proceedings. Even if the treating physician opinions are not entitled to controlling weight, the ALJ still must provide a more thorough analysis, as required

by the pertinent regulations. *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009) ("If an ALJ does not give a treating physician's opinion controlling weight, the regulations require the ALJ to consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion"). On remand, the ALJ should also incorporate Clayhiggs' mental impairments into the VE-hypothetical. *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010) ("Our cases generally have required the ALJ to orient the [vocational expert] to the totality of a claimant's limitations. Among the limitations the VE must consider are deficiencies of concentration, persistence and pace. Our cases, taken together, suggest that the most effective way to ensure that the VE is apprised fully of the claimant's limitations is to include all of them directly in the hypothetical").

The Commissioner's denial of benefits is **REVERSED**, and this matter is **REMANDED** for further proceedings pursuant to 42 U.S.C. § 405(g) (sentence four).

Dated at Milwaukee, Wisconsin, this 29th day of July, 2014.

**BY THE COURT:**

**HON. RUDOLPH T. RANDA**
**U.S. District Judge**